UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES KINSELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-01548-RLY-MJD |
| ) | |
| FRANCISCAN ALLIANCE, INC. D/B/A ) | |
| FRANCISCAN PHYSICIAN NETWORK, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Plaintiff's Motion to Compel. [Dkt. 41.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for the reasons and to the extent set forth below.

**I. Background**

Plaintiff alleges in this case that he was terminated from his position as a physician specializing in pulmonary and sleep medicine in retaliation for expressing his concerns about the legality of a proposed "under arrangement" agreement (the "Proposed Agreement") between Defendant (his employer) and the Indiana Sleep Center ("ISC"). Plaintiff's retaliation claim is brought pursuant to the False Claims Act, 31 U.S.C. § 3730(h), which prohibits an employer from terminating an employee "because of lawful acts done by the employee . . . in furtherance

of an action under this section or other efforts to stop 1 or more violations" of the False Claims Act.

Plaintiff alleges that on April 9, 2024, he expressed his concerns to Defendant's Chief Operating Officer that the Proposed Agreement would violate the so-called Stark Law, which "prohibits or limits physician referrals to entities in which the physician has a financial relationship." [Dkt. 42 at 3] (citing 42 U.S.C. § 1395nn). Plaintiff's employment contract with Defendant was terminated the following day.

In his brief, Plaintiff summarizes his concerns regarding the Proposed Agreement as follows:

> [Defendant] partially owns the ISC through a joint venture with Indiana Internal Medicine Sleep Consultants/Center for Respiratory & Sleep Medicine ("IIMC/CRSM"). Dkt. 15 at 2-3. In the proposed "under arrangement," [Defendant] would bill patients of the ISC, and the ISC would receive a flat fee for services. Dkt. 15 at 3. This plan arose out of a broader plan to merge the ISC with the Franciscan Sleep Disorders Center, of which [Plaintiff] was the Medical Director. *Id.* If the "under arrangement" violated the Stark Law, and/or another federal law, the anti-kickback statute ("AKS"), then [Defendant] would be highly likely to violate the False Claims Act when submitting claims to the federal government for Medicare or Medicaid payments, because it must affirmatively represent that it is complying with all federal laws when submitting claims.

*Id.* (citing [Dkt. 15 at 6]).

## II. Discussion

Plaintiff asks that Defendant be compelled to "provide complete responses and answers, and produce all non-privileged documents, in response to the following discovery requests: Requests for Production Nos. 12-15, and 18, and Interrogatory Nos. 5-6, and 8." [Dkt. 41 at 1.][1] Neither party discusses the requests at issue individually. Rather, Defendant has objected to all of them on relevancy grounds, arguing that the categories of information they seek—information

---

[1] Plaintiff's motion raises two other issues, but those have been resolved. *See* [Dkt. 44 at 2].

2

about the Proposed Agreement, the proposed merger between the ISC and the Franciscan Sleep Disorders Center, and Defendant's relationship with the IIMC/CRSM and the ISC—are not relevant to the claims or defenses in this case and therefore not discoverable.

Defendant's relevancy argument is based on the fact that Plaintiff does not have to prove that the Proposed Agreement would actually have violated the law in order to prevail on his retaliation claim. Rather,

> [t]o recover, a former employee must prove that [he] engaged in protected conduct and was fired because of that conduct. In determining whether the former employee engaged in protected conduct, we ask whether (1) the employee in good faith believe[d], and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.

*United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 661 (7th Cir. 2022) (citations and quotation marks omitted). "In assessing the second, objective prong, we look to the facts known to the employee at the time of the alleged protected activity." *United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016) (citations and quotation marks omitted). Therefore, Defendant argues, Plaintiff may not use any information he did not have at the time he raised concerns about the Proposed Agreement to show that his concerns were objectively reasonable, making the information he seeks not relevant.

The Court finds that Defendant's argument, while not unreasonable, depends on too narrow a view of relevancy, especially in the discovery context. It is absolutely true that, as Defendant argues, "[i]n a retaliation case, [Plaintiff] does not carry the burden of proving that a fraud occurred, nor does [Defendant's] defense rest on the fact that no fraud occurred." [Dkt. 44 at 2.] But that does not make the actual legality of the Proposed Agreement irrelevant. Defendant "disputes any contention that the proposed transaction did not comply with applicable laws." [Dkt. 44 at 1-2.] Presumably, Defendant will want to tell the jury that fact, just as it

3

chose to include that fact in its brief. Even if it does not, whether Plaintiff's professed concerns were objectively reasonable cannot be decided in a vacuum. The facts Plaintiff seeks in the discovery at issue will likely provide context that is relevant to the core issues in this case. Indeed, the Seventh Circuit recognized the relevance of the underlying facts to a retaliation claim in *U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, 806 F.3d 946, 953 (7th Cir. 2015). In that case, the court found that because the plaintiff's claim that her former employer had committed fraud "lack[ed] factual support, no reasonable employee in similar circumstances would believe that the [employer] was committing fraud against the federal government."

Defendant also argues that documents relating to Defendant's relationship to IIMC are irrelevant because "the proposed transaction that allegedly gave rise to this litigation never involved IIMC, LLC." [Dkt. 44 at 8.] Plaintiff is entitled to the documents he seeks in order to confirm that fact.

The Court finds the categories of documents sought by Plaintiff to be relevant and discoverable and therefore **GRANTS** Plaintiff's motion to compel. Defendant's objections to Request for Production Nos. 12-15, and 18, and Interrogatory Nos. 5-6, and 8 are overruled, and Defendant is ordered to provide complete and unequivocal responses to those requests.

In their response to Plaintiff's motion to compel, Defendant asks that if the Court grants Plaintiff's motion that Defendant not be required to produce the documents at issue until after Plaintiff has been deposed and has either signed his deposition or waived signature.[2] Although

---

[2] Plaintiff argues that this is an improper motion for protective order because it was made within a response brief, which is prohibited by Local Rule 7-1(a). ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."). That is technically correct. However, the Court will forgive the technical violation of the rule because, in essence, Defendant sought alternative forms of relief in its brief: either a protective order excusing it from responding to the discovery requests entirely or a protective order

4

the Court is generally loathe to dictate the sequencing of discovery, this is one of the rare instances in which it is appropriate to do so. Given Plaintiff's burden of proof, the Court finds that Defendant is entitled to depose Plaintiff about his knowledge at the time he raised his concerns about the Proposed Agreement knowing that Plaintiff's memory has not been tainted by Defendant's document production, something that could happen through no fault of Plaintiff or his counsel.

Plaintiff's deposition is currently scheduled for May 29, 2025. The Court understands that Plaintiff needs the documents at issue prior to other depositions that are currently scheduled prior to Plaintiff's deposition, on May 15, May 21, and May 27. The practical reality is that there is not sufficient time for Defendant to produce the documents in question and Plaintiff's counsel to review them prior to the earlier of those dates, so those depositions likely would have to be rescheduled anyway. Discovery does not close until August 15, 2025, so there is ample time to reschedule them for after the conclusion of Plaintiff's deposition. However, the Court does not find it necessary to delay production of the documents until Plaintiff has signed the deposition or waived signature; it is sufficient for him to have sat for his deposition.

### III. Conclusion

For the reasons and to the extent set forth above, Plaintiff's Motion to Compel, [Dkt. 41], is **GRANTED**. Defendant shall provide complete and unequivocal responses to Plaintiff's Request for Production Nos. 12-15 and 18, and Interrogatories Nos. 5-6 and 8 **within two business days of the completion of Plaintiff's deposition**.

---

excusing it from responding to the discovery requests prior to Plaintiff's deposition. It was acceptable under the circumstances for Defendant to do so in a single filing.

5

The Court finds Defendant's position with regard to the issues raised in the instant motion to be substantially justified. Accordingly, no award of attorney fees is appropriate. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

SO ORDERED.

Dated: 6 MAY 2025

                                    Mark J. Dinsmore
                                    United States Magistrate Judge
                                    Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.